UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALISA BETH WIENER and
LEWIS STEVEN WIENER AS CO-PERSONAL
REPRESENTATIVES OF THE ESTATE OF JILLIAN
ROSE WIENER, ALISA BETH WIENER and LEWIS                    **COMPLAINT**
STEVEN WIENER AS CO-PERSONAL
REPRESENTATIVES OF THE ESTATE OF
LINDSAY ELIZAWIENER, ALISA BETH WIENER,
individually, LEWIS STEVEN WIENER, individually,
ZACHARY WIENER,

                            Plaintiff(s),

        -against-

PAMELA A. MILLER, PETER C. MILLER,
3 SPRING LANE I LLC, 3 SPRING LANE II LLC,
HOMEAWAY.COM, INC., VRBO HOLDINGS, INC.,
                            Defendants
----------------------------------------------------------------X

        Plaintiffs by their attorneys, ALONSO KRANGLE LLP, and ROBERT A. CARDALI,

P.C., complaining of the defendants, respectfully allege, upon information and belief, as follows:


                            **INTRODUCTION**

        This action revolves around a tragic fire that occurred in the early morning hours of

August 3, 2022, at a vacation home located in Sag Harbor, New York. As detailed below,

defendants' greed, corner-cutting and willful failure to give any thought to the safety of the

occupants of the premises led to the deaths of Jillian Rose Wiener and her sister Lindsay Eliza

Wiener.

        At the time of her passing Jillian Rose was a rising senior at the University of Michigan.

She was a passionate environmentalist and had just finished a semester abroad studying ocean

conservation and environmental policy. Lindsay Eliza had just finished her freshman year at

Tulane University where she was focusing her studies on marketing and Jewish studies. They were two shining lights who brought joy to everyone they encountered. Their loss cannot be measured. Rather than fond memories of a week's vacation on Long Island's east end, the Wiener family is left with a nightmare from which they cannot wake. As a consequence of the egregious behavior of the defendants, the world will never see the full potential of these extraordinary young women.

Their parents, Alisa and Lewis Wiener are broken – having suffered a loss that no parent could or should have to endure. Their brother Zachary is haunted by their loss and the notion that the girls could not be saved. Unbearable pain and loss all owing to the defendants' desire to earn a buck from the rental of a home to unwitting vacationers that was manifestly not safe for rental.

## PARTIES

1.      Plaintiff Alisa Beth Wiener is a resident of the State of Maryland.

2.      Plaintiff Lewis Steven Wiener is a resident of the State of Maryland.

3.      Plaintiff Zachary Wiener is a resident of the State of Maryland.

4.      Decedent Jillian Rose Wiener was a resident of the State of Maryland.

5.      Decedent Lindsay Eliza Wiener was a resident of the State of Maryland.

6.      Defendant Pamela A. Miller is a resident of the State of New York, County of Suffolk.

7.      Defendant Peter C. Miller is a resident of the State of New York, County of Suffolk.

8.      Defendant 3 Spring Lane I LLC is a limited liability company existing by virtue of the Limited Liability Company Law of the State of New York with a principal place of business located at 3 Spring Lane, Sag Harbor, New York.

9.      Defendant 3 Spring Lane II LLC is a limited liability company existing by virtue of the Limited Liability Company Law of the State of New York with a principal place of business located at 3 Spring Lane, Sag Harbor, New York.

10.     The sole member of 3 Spring Lane I LLC is defendant Peter C. Miller.

11.     The sole member of 3 Spring Lane II LLC is defendant Pamela A. Miller.

12.     Defendant Homeaway.Com, Inc., (hereinafter Homeaway) is a Texas Corporation located at 11920 Alterra Pkwy, Austin, Texas 78758.

13.     Defendant Vrbo Holdings, Inc. (hereinafter Vrbo) is a Texas Corporation located at 11920 Alterra Pkwy, Austin, Texas 78758

14.     On October 25, 2022, Plaintiffs Alisa Beth Wiener and Lewis Steven Wiener were appointed co-personal representatives of the Estate of Jillian Rose Wiener.

15.     On October 25, 2022, Plaintiffs Alisa Beth Wiener and Lewis Steven Wiener were appointed co-personal representatives of the Estate of Lindsay Eliza Wiener.

## JURISDICTION AND VENUE

16.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1).

17.     The amount in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs.

18.     Venue with respect to this action lies within the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b)(2).

19.     The causes of action alleged in this Complaint arise out of or relate to defendants' contacts with New York and specifically this judicial district.  Plaintiffs rented a vacation home located in Sag Harbor, New York that was owned, maintained, marketed, rented and controlled by defendants.  All parties have sufficient minimum contacts with New York and this district such that, "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

20.     This Court has personal jurisdiction over each defendant insofar as each resides in or is authorized or licensed to conduct business in New York, maintains and carries on systematic and continuous contacts in this state and this district, regularly transacts business within this state, and regularly avails itself of the benefits of New York. Additionally, defendants caused tortious injury in New York by acts and omissions in this state and caused tortious injury in New York by acts and omissions outside this state while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or services rendered in New York and specifically this judicial district.

21.     Venue is proper before this Court because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22.     This action revolves around a tragic fire that took place in the early morning hours of August 3, 2022, at the premises known as 3 Spring Lane, Sag Harbor, New York 11963 (hereinafter "the premises").

23.     The premises are also known by the address 3 Spring Lane, Hamlet of Noyac, Town of Southampton, County of Suffolk, State of New York.

24.     At the time of the fire the Wiener family, consisting of Alisa Beth Wiener, her husband Lewis Steven Wiener and their three children, Jillian Rose Wiener, Lindsay Eliza Wiener and Zachary Wiener were staying in the home.

25.     The Wieners were staying in the home for what they hoped would be a week of vacation on Long Island's east end.

26.     Defendant Pamela A. Miller entered into an agreement with Defendant Homeaway whereby defendant Homeaway would list the property as being available for rental.

27.     The listing with Homeaway also resulted in the property being listed and shown on the platform of defendant Vrbo.

28.     All communication with respect to the Wieners' rental of the home took place over and through the Homeaway / Vrbo website.

29.    Access to the home was granted to the Wieners via the Homeaway /Vrbo website.

30.    Defendants Homeaway and Vrbo made written representations to plaintiffs that the home contained several safety features including smoke alarms and carbon monoxide alarms.

31.    Defendants, Homeway and Vrbo list multiple homes on the eastern end of Long Island for rent on their websites.

32.    Defendants, Homeway and Vrbo control access to the homes they list, market and rent on their websites.

33.    Renters are only able to gain access to the homes they find on Homeaway and Vrbo through the Homeaway and Vrbo platform.

34.    The only way the Wieners were able to gain access to the home and consummate the rental was through the Homeaway/Vrbo website.

35.    After renting the home the Wiener family met with defendant Pamela A. Miller at the premises.

36.    Defendant Pamela A. Miller advised the Wieners that she and her husband, defendant Peter C. Miller had done much of the renovation work to the premises themselves – including the installation of an outdoor kitchen.

37.    Contrary to the representations made by defendants, there were no working fire, smoke or carbon monoxide alarms in the home.

38.    At the time of the fire, the smoke alarms had either been disconnected from any form of electrical supply, had their batteries removed or contained lifeless batteries.

39.    The absence of any working smoke, fire or carbon monoxide detectors left the Wiener family without the benefit of any alarm or warning of the fires – robbing them of precious time to escape the home.

40.    At the time of the fire, the home did not have the required rental permit.

41.    At the time of the fire, the outdoor kitchen had not been inspected by a qualified electrician or other professional to ensure that it complied with local, state and national safety standards.

42.     At the time of the rental and the fire the premises were in violation of multiple Town of Southampton safety regulations and ordinances.

43.     At the time of the rental the electrical wiring within the premises was in violation of multiple safety standards and regulations.

44.     Defendant 3 Spring Lane I LLC owned the premises known as 3 Spring Lane, Sag Harbor, New York.

45.     Defendant 3 Spring Lane I LLC operated the premises known as 3 Spring Lane, Sag Harbor, New York.

46.     Defendant 3 Spring Lane I LLC managed the premises known as 3 Spring Lane, Sag Harbor, New York.

47.     Defendant 3 Spring Lane I LLC maintained the premises known as 3 Spring Lane, Sag Harbor, New York.

48.     Defendant 3 Spring Lane I LLC controlled the premises known as 3 Spring Lane, Sag Harbor, New York.

49.     Defendant 3 Spring Lane II LLC owned the premises known as 3 Spring Lane, Sag Harbor, New York.

50.     Defendant 3 Spring Lane II LLC operated the premises known as 3 Spring Lane, Sag Harbor, New York.

51.     Defendant 3 Spring Lane II LLC managed the premises known as 3 Spring Lane, Sag Harbor, New York.

52.     Defendant 3 Spring Lane II LLC maintained the premises known as 3 Spring Lane, Sag Harbor, New York.

53.     Defendant 3 Spring Lane II LLC controlled the premises known as 3 Spring Lane, Sag Harbor, New York.

54.     Defendant Pamela A. Miller owned the premises known as 3 Spring Lane, Sag Harbor, New York.

55.     Defendant Pamela A. Miller operated the premises known as 3 Spring Lane, Sag Harbor, New York.

56.     Defendant Pamela A. Miller managed the premises known as 3 Spring Lane, Sag Harbor, New York.

57.     Defendant Pamela A. Miller maintained the premises known as 3 Spring Lane, Sag Harbor, New York.

58.     Defendant Pamela A. Miller controlled the premises known as 3 Spring Lane, Sag Harbor, New York.

59.     Defendant Peter C. Miller owned the premises known as 3 Spring Lane, Sag Harbor, New York.

60.     Defendant Peter C. Miller operated the premises known as 3 Spring Lane, Sag Harbor, New York.

61.     Defendant Peter C. Miller managed the premises known as 3 Spring Lane, Sag Harbor, New York.

62.     Defendant Peter C. Miller maintained the premises known as 3 Spring Lane, Sag Harbor, New York.

63.     Defendant Peter C.  Miller controlled the premises known as 3 Spring Lane, Sag Harbor, New York.

64.     Defendant Homeaway marketed the premises for rental to the public.

65.     Defendant Homeaway controlled the rental of the premises to the public.

66.     Defendant Vrbo marketed the premises for rental to the public.

67.     Defendant Vrbo controlled the rental of the premises to the public.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS - NEGLIGENCE

68.     That on August 3, 2022, plaintiffs were lawfully on the aforesaid premises with the knowledge, permission and consent of the defendants.

69.     That on August 3, 2022, defendants owed a duty of care to the plaintiffs as the owners and renters of the premises.

70.     That on August 3, 2022, dangerous and defective conditions existed on the aforesaid premises.

71.     That upon information and belief, defendants had actual notice of the dangerous, defective conditions.

72.     That upon information and belief, defendants had constructive notice of the dangerous, defective conditions.

73.     That upon information and belief, the Miller defendants, Pamela A. Miller and Peter C. Miller in their individual capacities caused and created the dangerous, defective conditions.

74.     On August 3, 2022, while plaintiffs were lawfully at the aforesaid premises, pursuant to the short-term rental agreement with defendants, plaintiffs were caused, due to the defective conditions, to sustain severe, catastrophic, permanent injuries.

75.     The above-mentioned occurrence and the results thereof were caused by the negligence of the defendants and/or said defendants' servants, agents, employees and/or licensees in the ownership, operation, management, supervision, maintenance and control of the aforesaid premises.

76.     That no negligence on the part of the plaintiffs contributed to the occurrence alleged herein in any manner whatsoever.

77.     That because of the above stated conditions, plaintiffs were caused to sustain serious injuries and to have suffered pain, shock, emotional distress, mental anguish and death; that these injuries and their effects will be permanent; as a result of said injuries plaintiffs were caused and will continue to be caused to incur expenses for medical care and attention; and plaintiffs were and will continue to be rendered unable to perform plaintiffs' normal activities and duties and have sustained a resultant loss therefrom.

## <u>AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF ALL</u>
## <u>PLAINTIFFS AGAINST ALL DEFENDANTS – GROSS NEGLIGENCE</u>

78.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though set forth herein.

79.     At all times hereinafter mentioned, defendants individually and through their respective officers, employees, agents, representatives, servants and independent contractors, acted in so careless a manner as to show complete disregard for the rights and safety of plaintiffs.

80.     At all times hereinafter mentioned, defendants individually and through their respective officers, employees, agents, representatives, servants and independent contractors, acted and/or failed to act knowing that their conduct would probably result in injury, damage or death to plaintiffs.

81.     At all times hereinafter mentioned, defendants individually and through their respective officers, employees, agents, representatives, servants and independent contractors, acted in so reckless a manner and/or failed to act in circumstances where an act was clearly required, so as to indicate complete disregard of the consequences of their actions and/or inactions.

82.     Prior to and at all times hereinafter mentioned, defendants' conduct, as outlined, hereinabove, was in reckless disregard for the safety of plaintiffs and the public at large.

83.     Prior to and at all times hereinafter mentioned, defendants' conduct, as outlined hereinabove, was willful.

84.     Prior to and at all times hereinafter mentioned, the actions of defendants were willful and wanton acts, in total disregard of the plaintiffs' well-being, thereby constituting gross negligence and/or thereby constituting willful and wanton acts.

85.      As a result of the foregoing, plaintiffs are entitled to punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS – NEGLIGENT MISREPRESENTATION

86.      Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

87.      At all relevant times defendants owned, operated, controlled, rented and or marketed the aforesaid property for use by vacationing families visiting the east end of Long Island and therefore owed a duty of reasonable care to avoid causing harm to consumers making use of the premises and other homes found on the Homeaway / Vrbo platforms.

88.      Defendants were negligent, reckless, and careless and owed a duty to Plaintiffs to make accurate and truthful representations regarding the fire safety equipment contained within the premises, and Defendants breached their duty, thereby causing Plaintiff to suffer harm.

89.      Defendants represented to plaintiffs via direct conversations, emails and website postings, that the premises contained fire safety equipment.  Specifically, defendants Homeaway and Vrbo sent plaintiffs the following email:

**From:** Vrbo <noreply@messages.homeaway.com>
**Date:** July 26, 2022 at 12:50:26 PM EDT
**To:** alisa wiener
**Subject: Here are the keys to your Noyack, New York, United States of America trip!**
**Reply-To:** Vrbo <noreply@messages.homeaway.com>



# Here are the keys to your Noyack, New York, United States of America trip!

View your trip summary below, or visit your account to see house rules, payment history, and more.

**Access your rental**

ⓘ
**Know before you go**
Check Covid restrictions here

# Noyack, New York, United States of America

Reservation ID

## HA-6W5CKN

Property ID

## 7158591ha

Arrive

## Jul 29, 2022

Depart

## Aug 5, 2022

Check-in time

## 4:00 PM

Check-out time

## 10:00 AM

Guests

## 5 adults

Nights

## 7

Address

## 3 Spring Ln
## Sag Harbor, NY 11963

# Arrival information

The host hasn't provided arrival information yet. For the most up-to-date info, contact the property manager directly.

# Safety information

The host has provided the following information about safety features at the property. For the most up-to-date information, contact the property manager directly.

✓

**Fire extinguisher**
under kitchen sink

✓

**First aid kit**
drawer to right of kitchen sink

✓

**Smoke detector**
outside each bedroom door and inside each bedroom

✓

**Deadbolt lock**

✓

**Exterior lighting**

✓

**Carbon monoxide detector**
outside each bedroom door and inside each bedroom

**Please note:** this list may not include all of the safety features at this property.



# Key trip details at your fingertips

Get on-the-go trip updates and access essential info from anywhere!

**Use the app**

Available for iOS and Android.



We're here to help. Visit our **Help Center** for useful info and FAQs



© 2022 **Vrbo**. All rights reserved.

Vrbo and the Vrbo logos are trademarks of Vrbo. Vrbo is located at 11920 Alterra Pkwy, Austin, TX 78758

View, save or print our **Terms & Conditions**.

**Contact Us** | **Privacy Policy**

90.      The representations with respect to the Smoke Detectors and Carbon Monoxide detectors were **FALSE**.

91.      Defendants knew or should have known these representations were false and negligently made them without regard for their truth or any effort on the part of the defendants to ascertain their truthfulness.

92.      Defendants had a duty to accurately and truthfully provide this critical safety information to plaintiffs.  In misrepresenting this information to plaintiffs, defendants breached their duty. Defendants also gained financially from, and as a result of their breach.

93.      Defendants intended for plaintiffs to rely on these representations.

94.      The representations were particularly dangerous in that in some instances, there were what appeared to be smoke, or carbon monoxide alarms present at the aforesaid locations, lulling plaintiffs into a false sense of security.

95.      In fact, these "alarms" were nothing more than the worthless carcasses of non-functioning alarms that had no power, had been disconnected, had their batteries removed, or were left with useless, lifeless batteries.

96.      Each of these misrepresentations were material at the time they were made.  In particular, each of the misrepresentations concerned material facts that were essential to the analysis undertaken by plaintiffs as to whether to take possession of the property.

97.      The Homeaway/Vrbo defendants took no steps to verify the truthfulness of the representations with respect to smoke and carbon monoxide alarms before they directly transmitted them to plaintiffs.

98.      Plaintiffs reasonably relied on these representations and were catastrophically harmed as described herein.  Plaintiffs' reliance on defendants' representations

was a substantial factor in causing their harm.  Had defendants told plaintiff the truth about the complete absence of any type of working smoke or carbon monoxide alarm within the property, Plaintiffs would not have risked their physical safety and ultimately the lives of their daughters by staying in the premises.

99.      As a direct and proximate result of the defendants' negligent misrepresentations concerning the premises, plaintiffs have been injured, sustained severe and permanent pain, suffering, emotional pain and distress, disability, impairment, loss of enjoyment of life, loss of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

### AND AS FOR A FOURTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS

**Violation of the New York Deceptive Acts and Practices Act
(N.Y. Gen. Bus. Law § 349)**

100.      Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

101.      Plaintiffs are "persons" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendants are each a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

102.      The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

103.      In the course of their business, defendants, directly or through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts

regarding the fire safety of the premises they were marketing as vacation rentals.

104.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the presence of functioning smoke and carbon monoxide alarms at the premises, and the fact that the premises were in a defective, unreasonably dangerous condition and were not fit to be occupied. As detailed above, defendants engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

105.     Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of the premises were disseminated to plaintiffs in a uniform manner.

106.     Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including plaintiffs, about the inherently defective and unreasonably dangerous nature of the premises.

107.     The facts regarding the absence of fire safety equipment and the dangerous condition of the premises that defendants knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to plaintiffs and other consumers who consider such facts to be important to their rental decisions with respect to the premises.

108.     Plaintiffs had no way of discerning that defendants' representations were false and misleading, or otherwise learning the facts that defendants had concealed or failed to disclose.  Plaintiffs did not, and could not, unravel defendants' deception on their own.

109.     Defendants had an ongoing duty to plaintiffs to refrain from unfair and deceptive practices under the New York DAPA in the course of their business. Specifically, defendants owed plaintiff a duty to disclose all the material facts regarding the premises, including that same contained no working smoke or carbon monoxide alarms,  had defective faulty wiring, did not have the requisite rental permit and were not fit to be used for occupancy because they possessed exclusive knowledge, they intentionally concealed the facts regarding the premises from plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

110.     Plaintiffs were aggrieved by defendants' violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of defendants' knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts.   Specifically, plaintiffs rented the premises in reliance on defendants' misrepresentations, omissions, concealments, and failures to disclose material facts regarding the safety of the premises.  Had defendants not engaged in the deceptive acts and practices alleged herein, plaintiffs would not have rented the premises and would not have suffered the catastrophic losses they suffered.

111.     Defendants' violations present a continuing risk to plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

112.     As a direct and proximate result of the defendants' violations of the New York DAPA, concerning the premises, plaintiffs have been injured, sustained severe and permanent pain, suffering, emotional pain and distress, disability, impairment, loss of enjoyment of life, loss of life, economic loss and damages including, but not limited to past and future

medical expenses, lost income, attorneys fees, statutory and other damages.

## AND AS FOR A FIFTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS

### Violation of the New York False Advertising Act (N.Y. Gen Bus. Law § 350)

113.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

114.    Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

115.    The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350...if such advertising is misleading in a material respect."

116.    Defendants caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to defendants, to be untrue and misleading to consumers, including Plaintiff.

117.    In the course of their business, defendants, directly or through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts with respect to the premises, including that same did not contain working smoke or carbon monoxide alarms, had faulty wiring, did not have the requisite rental permit and were not fit for occupancy.

118.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the premises, as detailed above, Defendants engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

119.     Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of the premises were disseminated to plaintiffs.

120.     Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including plaintiffs, about the inherently defective and unreasonably dangerous nature of the premises.

121.     The facts regarding the premises that defendants knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable renter, and they were, in fact, material to plaintiffs, who considered such facts to be important to their decision to rent the premises.

122.     Plaintiffs had no way of discerning that defendants' representations were false and misleading, or otherwise learning the facts that defendants had concealed or failed to disclose.   Plaintiff did not, and could not, unravel defendants' deception on their own.

123.     Plaintiffs were aggrieved by defendants' violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of defendants' knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts.   Specifically, plaintiffs rented the premises in part, in reliance on defendants' misrepresentations, omissions, concealments, and failures to disclose material facts regarding the safety of the premises.  Had defendants not engaged in the deceptive acts and practices alleged herein, plaintiffs would not have rented the premises and would not have suffered the catastrophic losses they suffered.

124.     Defendants' violations present a continuing risk to plaintiffs, as well as to

the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

125.     As a direct and proximate result of the defendants' violations of the New York FAA, concerning the premises, plaintiffs have been injured, sustained severe and permanent pain, suffering, emotional pain and distress, disability, impairment, loss of enjoyment of life, loss of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, attorneys' fees, statutory and other damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
## WRONGFUL DEATH OF JILIAN ROSE WIENER

126.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though set forth herein.

127.     By reason of the foregoing conduct and omissions on the part of defendants the plaintiffs' Decedent JILLIAN ROSE WIENER sustained severe bodily injuries resulting in wrongful death.

128.     By reason of the foregoing, the plaintiffs' decedent JILLIAN ROSE WIENER left surviving next of kin and distributees.

129.     As a result of the foregoing, the plaintiffs' decedent's surviving next of kin and distributees became liable for, and expended money for, funeral and other expenses.

130.     As a result of the foregoing, the plaintiffs' decedent's surviving next of kin and distributees suffered pecuniary damages.

131.     As a result of the foregoing, the plaintiffs' decedent's surviving next of kin sustained all other damages allowed by law.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## CONSCIOUS PAIN AND SUFFERING OF JILLIAN ROSE WIENER

132.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though set forth herein.

133.     By reason of the foregoing conduct and omissions on the part of defendants the plaintiffs' decedent sustained severe multiple injuries in, to, and about her body resulting in death.

134.     By reason of the foregoing, the plaintiff-decedent suffered excruciating pain and agony, including fear of imminent death.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## WRONGFUL DEATH OF LINDSAY ELIZA WIENER

135.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though set forth herein.

136.     By reason of the foregoing conduct and omissions on the part of the defendants the plaintiffs' decedent LINDSAY ELIZA WIENER sustained severe bodily injuries resulting in wrongful death.

137.     By reason of the foregoing, the plaintiffs' decedent LINDSAY ELIZA WIENER left surviving next of kin and distributees.

138.     As a result of the foregoing, the plaintiffs' decedent's surviving next of kin and distributees became liable for, and expended money for, funeral and other expenses.

139.     As a result of the foregoing, the plaintiffs' decedent's surviving next of kin and distributees suffered pecuniary damages.

140.     As a result of the foregoing, the plaintiffs' decedent's surviving next of

kin sustained all other damages allowed by law.

**AS AND FOR A NINTH CAUSE OF ACTION**
**CONSCIOUS PAIN AND SUFFERING OF LINDSAY ELIZA WIENER**

141.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though set forth herein.

142.     By reason of the foregoing conduct and omissions on the part of defendants the plaintiffs' decedent sustained severe multiple injuries in, to, and about her body resulting in death.

143.     By reason of the foregoing, the plaintiffs' decedent suffered excruciating pain and agony, including fear of imminent death.

**AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANTS PAMELA A.**
**MILLER AND PETER C. MILLER –**
**FRAUD AND DECEIT**

144.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

145.      At all relevant times defendants Pamela A. Miller and Steven C. Miller (Miller defendants) operated, controlled, rented and or marketed the aforesaid premises for use by vacationing families visiting the east end of Long Island and therefore had an interest in attracting and consummating rental agreements with consumers such as the plaintiffs herein.

146.      In an effort to entice renters to make use of the premises, the Miller defendants made multiple statements with respect to the safety features of the premises – including the claim that the premises contained working smoke and carbon monoxide alarms.

147.       The statements and representations with respect to the presence of working fire safety equipment were material and would be considered material to a reasonable

person deciding whether to rent the premises for a family vacation.

148.     The statements and representations made by the Miller defendants with respect to the Smoke Detectors and Carbon Monoxide detectors were **FALSE**.

149.     The Miller defendants knew the statements were false when they made them and disseminated them to plaintiffs in an effort to entice plaintiffs to come and stay at the premises.

150.     The Miller defendants made the statements and representations in an effort to have plaintiffs rely upon them and undertake a vacation rental of the premises.

151.     Plaintiffs relied upon the false statements made by the Miller defendants and decided to rent the premises -reasonably believing they were safe.

152.     Any reasonable person in the position of plaintiffs would have justifiably relied on the statements and representations made by the Miller defendants.

153.     Plaintiffs reasonably relied on these false statements and representations and were catastrophically harmed as described herein.  Plaintiffs' reliance on the Miller defendants' representations was a substantial factor in causing their harm.  Had the Miller defendants told plaintiffs the truth about the complete absence of any type of working smoke or carbon monoxide alarm within the property, plaintiffs would not have risked their physical safety and ultimately the lives of their daughters by staying in the premises.

154.     The deceit of the Miller defendants goes well beyond their lies with respect to the presence of working smoke and fire alarms.

155.     In an effort to line their pockets without any regard for the safety of the Wiener family the Miller defendants also failed to disclose the following material facts:

- The home had not been inspected and did not have a valid rental permit;

- The "outdoor kitchen" built by the Miller defendants was dangerous and not code compliant;

- The outdoor kitchen was not properly wired, violated applicable safety standards and interfered with the proper the working of fire safety equipment at the premises.

156.     In short, rather than make the necessary investments to make the premises habitable, the Miller defendants decided to cut corners and take short cuts. Short cuts that put a price on the safety and wellbeing of the Wiener family – the $8,000.00 they received for the week's rental.

157.     As the result of their greed, lies and deceit the Miller defendants destroyed the Wiener family.   The Millers stole the young lives of Jillian and Lindsay Wiener. Two extraordinary young women who will never have a chance to fully realize their great promise and left Alisa, Lew and Zach Wiener fractured in ways that can never be mended.

158.     This catastrophe is made all the more tragic by the fact that the Miller defendants could have avoided all of it had they simply behaved as reasonable property owner, rather than cut corners in an effort to earn a "quick buck."

159.     As a direct and proximate result of the Miller defendants' fraud and deceit plaintiffs have been injured, sustained severe and permanent pain, suffering, emotional pain and distress, disability, impairment, loss of enjoyment of life, loss of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, punitive, exemplary and other damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, plaintiffs demand judgment against defendants on each of the above-

referenced claims and causes of action, and as follows:

1.   Awarding compensatory damages in excess of $75,000, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.   Awarding economic and pecuniary damages in the form of medical expenses, out of pocket expenses, lost earnings, funeral expenses, wrongful death damages, and other economic damages in an amount to be determined at trial of this action;

3.   Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and plaintiffs in an amount sufficient to punish defendants and deter future similar conduct;

4.   Prejudgment interest;

5.    Post judgment interest;

6.   Awarding plaintiffs reasonable attorneys' fees as allowed by statute;

7.   Awarding Plaintiff the costs of these proceedings; and

8.   Such other and further relief as this Court deems just and proper.

A jury is hereby demanded for all issues subject to a jury's determination.


Dated:  Melville, New York
          November 15, 2022



                              Yours, etc.

Andres F. Alonso
Alonso Krangle LLP
425 Broad Hollow Road; Suite 408
Melville, NY 11747
Phone: (516) 350-5555
Facsimile: (516) 350-5554
Email: AAlonso@alonsokrangle.com


Martin Grossman
Law Office of Robert A. Cardali, P.C.
39 Broadway
35th Floor
New York, NY 10006
Tel: (212) 964-3855
Email: MGrossman@cardali.com