UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

ALISA BETH WIENER and LEWIS STEVEN
WIENER, *individually* and AS CO-PERSONAL
REPRESENTATIVES OF THE ESTATE OF JILLIAN
ROSE WIENER and THE ESTATE OF LINDSAY
ELIZA WIENER, ZACHARY WIENER,

                              Plaintiffs,

            -against-

PAMELA A. MILLER, PETER C. MILLER,
3 SPRING LANE I LLC, 3 SPRING LANE II
LLC, HOMEAWAY.COM, INC., VRBO HOLDINGS,
INC.,

                          Defendants.
--------------------------------------------------------------------X

**MEMORANDUM &
ORDER**
22-cv-7081 (GRB)(ARL)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 29 2023 ★

LONG ISLAND OFFICE

**Appearances:**

Andres F. Alonso
David Bruce Krangle
Alonso Krangle LLP
*Attorneys for Plaintiffs*
425 Broadhollow Road
Suite 408
Melville, NY 11747

Angela A. Lainhart
Nicoletti, Gonson Spinner LLP
*Attorneys for the Miller Defendants*
555 Fifth Avenue
8th Floor
New York, NY 10017

Daniel Z. Rivlin
Harvey J. Wolkoff
Alexander Sixto Del Nido
Luke William Nikas
Quinn Emanuel Urquhart & Sullivan
*Attorneys for the Vrbo Defendants*

1

111 Huntington Avenue
Suite 520
Boston, MA 02199

**GARY R. BROWN**, United States District Judge:

### BACKGROUND

Plaintiffs, a family of five from Maryland, rented a house through the online platform Vrbo.com ("Vrbo," together with Homeaway.com Inc., "Vrbo defendants")[1] seeking to spend a week in Sag Harbor, New York in August 2022. *See* Amended Complaint, DE 32 ¶¶ 1-5, 22. Defendants Peter and Pamela Miller owned and operated the property through the two LLC defendants, 3 Spring Lane I LLC and 3 Spring Lane II LLC. *Id.* ¶¶ 59-78. Plaintiffs filed the instant suit after a fire at the home tragically caused the deaths of Lindsay and Eliza Wiener. *Id.* ¶¶ 53-54. On March 29, 2023, the Court held a pre-motion conference addressing the Vrbo defendants' anticipated motion to dismiss, DE 24. At the conference the Court dismissed all claims asserted against the Vrbo defendants, "find[ing], without even reaching the CDA issues, this complaint simply does not articulate a plausible claim under any of the theories specified herein as against Vrbo. The allegations are threadbare. It defines that term." Mar. 29, 2023 Tr., DE 31 at 22:12-15. The Court, upon plaintiffs' request, directed that an amended complaint be filed within forty-five days. *Id.* at 23:6-19. Upon plaintiffs' filing of their amended complaint, DE 32, the Vrbo defendants filed a letter containing additional argument and authority in support of their motion. DE 35. Plaintiffs then responded by letter. DE 42. This opinion follows.

### DISCUSSION

*Legal Standard*

---

[1] "Vrbo" is an acronym for "vacation rentals by owner."

The allegations of the amended complaint are analyzed under the well-know and oft-recited standard for motions to dismiss as stated in *Kaemmlein v. Abbott Lab'ys*, 564 F. Supp. 3d 58, 64 (E.D.N.Y. 2021), which discussion is incorporated by reference herein.

### *Analysis*

Even assuming the allegations in the complaint are true, Section 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and the Vrbo defendants' lack of physical control over the property prove an insurmountable barrier to plaintiff's claims for the same reasons identified at the March 29, 2023, pre-motion conference. Further, plaintiffs have again failed to allege the existence of any "special relationship" between them and the Vrbo defendants, foreclosing any claim for negligent misrepresentation.

### *Section 230 of the CDA*

The new allegations, principally that the Vrbo defendants "list and market" the property, DE 32 ¶ 26, and that "[t]he property in question was placed into the stream of commerce and made available for rental only by the Homeaway/Vrbo defendants," *id.* ¶ 37, fail to establish liability. Nor does the additional allegation that "[a]ll representations made with respect to the condition of the property were communicated to the Wiener family by the Homeaway/Vrbo defendants." *Id.* ¶ 86. As determined previously, the defendants merely transmit information provided by third-party property owners and in no way "develop" the content of the messages.[2] Section § 230 thus remains a complete bar to the claims for violation of §§ 349 and 350 of the New York General Business Law. 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content

---

[2] To the extent plaintiffs seek to rely on a 2018 statement from a Vrbo spokesman that Vrbo "require[s] that owners and managers around the world agree to comply with local safety codes and regulations when listing their properties with us," DE 32 at ¶ 40, such reliance is rendered unreasonable by the explicit representation from Vrbo that all safety information was provided by the hosts. *Id.* at 16.

provider."). This protection extends to the transmission of false statements like those alleged to have been made by the Miller defendants. *See, e.g., Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019) ("As courts uniformly recognize, § 230 immunizes internet services for third-party content that they publish, including false statements, against causes of action of all kinds.").

The Second Circuit's holding in *Force* is dispositive on this point. As The Circuit noted under circumstances similar to those herein:

> Plaintiffs seek to hold Facebook liable for "giving Hamas a forum with which to communicate and for actively bringing Hamas' message to interested parties." Appellants' Reply Br. 37; *see also, e.g.*, Appellants' Br. 50–51 (arguing that the federal anti-terrorism statutes "prohibit[ ] Facebook from supplying Hamas a platform and communications services"). But that alleged conduct by Facebook falls within the heartland of what it means to be the "publisher" of information under Section 230(c)(1). So, too, does Facebook's alleged failure to delete content from Hamas members' Facebook pages. *See LeadClick*, 838 F.3d at 174 (stating that acting as the "publisher" under Section 230(c)(1) includes the decision whether to "withdraw" content).

*Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019). That Vrbo provided the Millers a platform to list their home for rental and published information the Millers provided nestles them squarely within the protections of Section 230. Nothing in the amended complaint overcomes that hurdle. The allegations that the Vrbo defendants failed to properly vet the information also fail, as Vrbo has done nothing more than provide "neutral assistance," *i.e.* providing users a platform to input their own content. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 589 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) ("An ICS may not be held liable for so-called 'neutral assistance' or tools and functionality that are available equally to bad actors and the app's intended users...To the extent Grindr contributes to the impersonating profiles, it is through such 'neutral assistance.'") (*purgandum*); *Ynfante v. Google LLC*, No. 22-CV-6831 (JGK), 2023 WL 3791652, at *3 (S.D.N.Y. 2023) ("Vetting and verifying are analogous to the quintessential duties of a publisher to screen and monitor content.").

4

Plaintiffs' allegation that Vrbo failed to disclose "that the information they are providing may be false," DE 32 ¶ 115, is of no moment. As stated above, Section 230's protections extend to the publication of false information. *See Marshall's Locksmith Serv.*, 925 F.3d at 1270. That the Millers may have submitted false information that Vrbo then published has no bearing on Vrbo's liability, a conclusion buttressed by the fact that the communication from Vrbo that plaintiffs seek to rely on to establish liability explicitly states: "*The host* has provided the following information about safety features at the property. *For the most up-to-date information, contact the property manager directly.*" DE 32 at 16 (emphases added). As such, claims three, four, and five are **DISMISSED**.

### Negligent Misrepresentation

As discussed above, liability for the allegedly false safety information upon which plaintiffs premise their claim cannot be imposed on Vrbo as a publisher. Claim three is, however, subject to dismissal for an additional, legally distinct reason. To establish a claim for negligent misrepresentation, the plaintiff must show, *inter alia*, that "the defendant had a duty, as a result of a special relationship, to give correct information." *Herrick*, 306 F. Supp. 3d at 598 (quoting *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914 (NSR), 2017 WL 4277187, at *4 (S.D.N.Y. 2017)). Plaintiffs have failed to demonstrate that they were in any relationship with the Vrbo defendants, let alone a "special relationship." It is well-settled that mere arms-length commercial relationships do not rise to the level of a special relationship. *See, e.g., Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007) ("Courts have routinely held that an arms-length commercial transaction, without more, does not give rise to a special duty to speak with care."). To the extent plaintiffs had any relationship with the Vrbo defendants, this relationship bears no markers of a "special relationship."

5

Plaintiffs' new assertion that "[t]he relationship between Homeaway/Vrbo and Plaintiffs was such that Plaintiffs had to rely upon the claims made by the Homeaway/Vrbo defendants in order to rent the property," DE 32 ¶ 135, is rendered implausible by the balance of the complaint. The allegations reveal that the plaintiffs could have contacted the Millers upon receiving the email incorporated within their complaint instructing them do so if they wanted more information.[3] Further, the plaintiffs allege that they spoke to defendant Pamela Miller in person when they arrived at the property, *id.* ¶ 45, affording them an additional opportunity to inquire as to the condition of the property.

Plaintiff's attempted reliance on Vrbo's "Book with Confidence Guarantee" is misplaced. The Guarantee explicitly covers only losses due to "Protected Incident[s]," which are defined as: (1) internet fraud involving theft of booking funds; (2) wrongful denial of entry; (3) material misrepresentations as to the state of the property; and (4) wrongful deposit loss. *See* Book with Confidence Guarantee, DE 35-4 at 3-8. Tellingly, Vrbo limits the types of losses it will reimburse and explicitly excludes "ANY DAMAGES OTHER THAN AMOUNTS ACTUALLY PAID TO OR DEPOSITED WITH THE ADVERTISER, INCLUDING ANY INDIRECT LOSSES, LOSS OF OPPORTUNITY, LOSS OF CUSTOM FEES, OTHER CONTRACTUAL PENALTIES, AIRFARE, TRANSPORTATION COSTS AND/OR ANY OTHER COST OR EXPENSE." *Id.* at 4-5 (emphasis in original). Additionally, Vrbo plainly states that users are not protected for "[a]ny loss of funds that is caused by or results from events of force majeure that are considered outside the control of the Advertiser, such as weather events, natural disasters or construction...or

---

[3] "When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." *Ynfante v. Google LLC*, No. 22-CV-6831 (JGK), 2023 WL 3791652, at *2 (S.D.N.Y. June 1, 2023) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

any loss of funds not involving a Protected Incident." *Id.* at 4. Further, the section defining "Protections Provided" lists only: (1) arrangement of alternative lodging; (2) rebooking at another Vrbo property; or (3) monetary reimbursement. *Id.* at 3. The clear thrust of this guarantee is the provision of alternative housing or refund of rental/deposit fees should a property be unavailable to a guest. Nothing in this guarantee can be said to have misled the Wieners as to the protections provided by Vrbo. As such, the claim for negligent misrepresentation is **DISMISSED.**

*Newly Asserted Claims: Breach of Contract[4] and Breach of Implied Warranty[5]*

The newly asserted claims for breach of contract and breach of implied warranty appear to be an attempt to disguise the failed informational claims. This approach has been roundly rejected as running afoul of Section 230. As Judge Caproni stated:

> Courts have interpreted "publication" capaciously to reach claims that, although pleaded to avoid the CDA, "implicitly require recourse to that content [posted by a third party] to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [content]." *Cohen*, 252 F.Supp.3d at 156. "To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' " *Id.* (quoting *LeadClick Media, LLC*, 838 F.3d at 175) (additional citations omitted); *see also Roommates.com, LLC*, 521 F.3d at 1170–71 (explaining that "publishing" includes "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online"); *see also Backpage.com, LLC*, 817 F.3d at 19–20 (explaining that plaintiffs' claims were unlikely to succeed because "there would be no harm to [the plaintiffs] but for the content of the postings").

---

[4] Though plaintiffs allege in conclusory fashion the existence of a contract between them and the Vrbo defendants, DE 32 ¶ 172, this allegation is belied by the balance of the complaint. Plaintiffs concurrently allege that Vrbo rented the property to them, *id.* ¶ 173, but also that the Millers "operated, controlled, **rented** and or marketed the aforesaid premises…and therefore had an interest in attracting and **consummating** rental agreements with consumers." *Id.* ¶ 207 (emphasis added). Further, plaintiffs allege the Millers received $8,000 for the week's rental, *id.* ¶ 218, directly contradicting their assertion that they entered into a contract with Vrbo by nominally paying a sum to Vrbo to secure the rental. *Id.* ¶ 172. Vrbo is nothing more than an intermediary providing a forum for transactions between third parties in the same way that Craigslist is not a party to every transaction that facilitated by its platform.
[5] There is no claim for breach of implied warranty for services in New York. *See Mill-Run Tours, Inc. v. Windstream Servs. LLC*, No. 16 CIV. 7052 (ER), 2017 WL 2930932, at *4 (S.D.N.Y. July 7, 2017) ("In New York, express and implied warranties apply only to the sale of goods; there is no cause of action for breach of warranty in the performance of a service."). Even if there was, however, the claim would nonetheless fail as Vrbo made no warranty by merely relaying information from the Millers to the plaintiffs. Finding a warranty herein and imposing liability on Vrbo would, again, run afoul of Section 230.

*Herrick*, 306 F. Supp. 3d at 590. Couching this claim as one for breach of contract or implied warranty does not change the outcome. *See Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) ("The ultimate question, though, does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another."). Liability could not be established here without treating Vrbo as a publisher, the exact outcome Section 230 was enacted to avoid. *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017), *aff'd in part, dismissed in part sub nom. Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ("Section 230(c)(1) is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party communications."). Simply put, but for the publication of the Miller's listing, the plaintiffs would not have suffered the harm they allege.[6] In that regard, the label affixed to these claims is immaterial. As such, the claims for breach of contract and implied warranty are **DISMISSED.**

### Lack of Duty

The claims for negligence and gross negligence, counts one and two, fail as against the Vrbo defendants for the same reasons identified during the March 29, 2023 pre-motion conference. Principally, defendants exercised no physical control over the property and thus owed no duty of

---

[6] In a factually analogous case, Judge Koeltl recently held:

> In this case, the plaintiff's causes of action against Google rest solely on the theory that Google did not block a third-party advertisement for publication on its search pages. But for Google's publication of the advertisement, the plaintiff would not have been harmed. *See, e.g.*, Compl. ¶¶ 38-39, 61. The plaintiff therefore seeks to hold Google liable for its actions related to the screening, monitoring, and posting of content, which fall squarely within the exercise of a publisher's role and are therefore subject to Section 230's broad immunity.

*Ynfante*, 2023 WL 3791652, at *2.

8

care to plaintiffs. *See* Mar. 29, 203 Tr., DE 31 at 23:1-7 ("[The complaint] doesn't say they control the premises. And of course, it can't say because this just simply a situation of an advertisement mechanism."); *see also Stevenson v. Saratoga Performing Arts Ctr.*, Inc., 981 N.Y.S.2d 877, 879 (2d Dep't 2014) ("In the context of premises liability, a party owes a duty to take reasonable measures to protect others from dangerous conditions on the property only where that party owns, occupies or controls the property or makes a special use of it."). As such, the claims predicated upon wrongful death and conscious pain and suffering, counts eight through eleven, fail as well. *See, e.g., Phillips v. City of Middletown*, 2018 WL 4572971, at *11 (S.D.N.Y. Sept. 24, 2018) ("Under New York law, to recover damages for wrongful death, a plaintiff must prove...a wrongful act, neglect or default of the defendant that caused the decedent's death.") (citing N.Y. Est. Powers & Trusts Law § 5-4.1)). Thus, the claims for negligence, gross negligence, wrongful death, and conscious and pain suffering are **DISMISSED**.

### CONCLUSION

Based on the foregoing, plaintiff's complaint is **DISMISSED** with prejudice as to defendants Homeaway.com, Inc. and Vrbo Holdings, Inc.

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2023

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge